UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
LEONARD MASON,
                                   :
            Petitioner,
                                   :    04 Civ. 3606 (PKC)(HBP)
     -against-
                                   :    REPORT AND
GARY GREEN, Superintendent,             RECOMMENDATION
Great Meadow Correctional          :
Facility,
                                   :
            Respondent.
                                   :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE P. KEVIN CASTEL, United States

District Judge,


I.   Introduction


            Petitioner Leonard Mason seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating the sentence and judgment of conviction imposed on

April 14, 1998 after a jury trial, by the Supreme Court of the

State of New York, New York County (Stackhouse, J.), for two

counts of burglary in the first degree, one count of criminal

possession of a weapon in the second degree, and one count of

criminal possession of a weapon in the third degree, in violation

of New York Penal Law Sections 140.30(1),(4), 265.03, and

265.02(4)[1], respectively.  As a result of that conviction, petitioner was sentenced as a second felony offender to determinate terms of imprisonment of eighteen years on each burglary count, fifteen years on the second-degree weapon possession charge, and seven years on the third-degree weapon possession charge, all of which are to run concurrently. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied in its entirety.

## II. Facts

### A. Facts Underlying Petitioner's Conviction

On Saturday, February 1, 1997, security guards Michael Keenan, Efrain Oliveras, and George Nichols were in the security office of Carnegie Hall Towers (the "Tower"), monitoring the live images from the building's security cameras (Tr.[2] 634-36).  At approximately 6:00 p.m., the three men observed petitioner repeatedly kick the door of a locked office on the fourteenth floor (Tr. 431-32, 567-69, 635-38).  As Keenan and Oliveras

---

[1]Effective November 1, 2006, this subdivision was repealed. See 2006 N.Y. Laws ch. 742 § 1.

[2]"Tr." refers to the transcript of petitioner's trial.

proceeded to the fourteenth floor, Nichols called the police (Tr. 434, 570, 653).

When they reached the fourteenth floor, petitioner had already fled, but they noticed footprints on the office door (Tr. 434, 570-71). Nichols, who had continued to monitor the security cameras, radioed Keenan and Oliveras that petitioner had descended to the eighth floor (Tr. 435). When Keenan and Oliveras arrived on the eighth floor, they confronted petitioner, who was "most definitely" the same man they had seen on the video monitor, and identified themselves as security guards (Tr. 435, 437, 573). While Keenan and Oliveras talked to petitioner, Nichols radioed that the police had arrived (Tr. 437). Upon hearing this, petitioner reached into his waistband and pulled out a semi-automatic pistol and inadvertently dropped his wallet (Tr. 437-38, 575). Oliveras immediately lunged at petitioner, attempting to restrain him, but petitioner swung his arm and struck Oliveras on the side of the face with the gun and fled into a stairwell (Tr. 576-80). Oliveras then recovered the dropped wallet, which contained photo identification of petitioner (Tr. 580-81, 697).

Meanwhile, police officers had blocked the Tower's exits (Tr. 524-25). As petitioner exited an elevator in the lobby, police apprehended him (Tr. 525-27). Oliveras, Keenan, and Nichols all unequivocally identified petitioner as the man

they had seen on the video monitor (Tr. 447, 584-85, 649-50).
Because petitioner did not have a weapon on his person at that
time, police canvassed the Tower's floors (Tr. 501, 552-53).  A
loaded semi-automatic pistol, with its hammer in a cocked
position, was discovered near a garbage bin on the fourteenth
floor (Tr. 501-02, 531).

    B.  <u>Petitioner's Trial</u>

      On October 21, 1997, petitioner proceeded to trial
before the Honorable John Stackhouse, Justice of the Supreme
Court of the State of New York, and a jury.  In addition to
establishing the facts above, the prosecution presented evidence
that the Tower's lobbies contained signs that directed delivery
personnel, messengers, and guests to sign a log book before
entering the Tower (Tr. 678-79).  The log book entries for
February 1, 1997 did not contain petitioner's name (Tr. 680-82).

      At the close of the prosecution's case, the defense
moved to dismiss the indictment, arguing that the prosecution had
failed to prove a <u>prima</u> <u>facie</u> case (Tr. 744).  The Trial Judge
denied the motion, stating that there existed sufficient evidence
from which the jury could find that petitioner had committed the
crimes charged in the indictment beyond a reasonable doubt (Tr.
744-45).  The defense then rested, presenting no evidence and

renewed its motion to dismiss (Tr. 745).  Again, the Trial Judge
rejected the motion (Tr. 745).

The jury returned verdicts of guilty on the charges of
burglary in the first degree and criminal possession of a weapon
in the second and third degrees (Tr. 852-53).  Petitioner was
subsequently sentenced as set forth above (S.[3] 17).

### C.  Post-Conviction Proceedings

In August 2000, petitioner, assisted by counsel, filed
his direct appeal, arguing that:  (1) the prosecution adduced
insufficient evidence at trial to prove, beyond a reasonable
doubt, that he had unlawfully entered the Tower; (2) the Trial
Judge erroneously admitted the Tower's log books; (3) the
prosecutor improperly made a comment to the jury during summation
that misstated the law of burglary; (4) his prior Virginia
conviction for credit card theft could not properly serve as a
predicate felony and (5) the sentence imposed for his conviction
of criminal possession of a weapon in the third degree was
erroneous and had to be vacated (Brief for Defendant-Appellant,
dated Aug. 2000 at 23, 29, 39, 47, annexed as Exhibit A to
Declaration of Nisha Desai, Esq., dated Sept. 2, 2004).  The
Appellate Division, First Department, rejected these claims and

---

[3]"S." refers to the transcript of petitioner's sentencing
hearing.

unanimously affirmed petitioner's conviction.  People v. Mason,
292 A.D.2d 294, 739 N.Y.S.2d 257 (1st Dep't 2002).

Thereafter, petitioner sought leave to appeal to the
New York Court of Appeals.  On March 20, 2003, the New York Court
of Appeals denied petitioner's application.  People v. Mason, 99
N.Y.2d 630, 790 N.E.2d 285, 760 N.Y.S.2d 111 (2003).

D.  Petitioner's Claims

In his pro se petition, petitioner asserts two claims[4]:
(1) that he was denied his Due Process right to a fair trial
because the prosecution failed to adduce evidence sufficient to
prove, beyond a reasonable doubt, that he unlawfully entered the
Tower; and (2) that he was denied his Due Process right to a fair
trial when, during summation, the prosecutor made a comment to

---

[4]In an affirmation in reply to respondent's opposition to
the petition (Docket Item 8), petitioner appears to raise the
five arguments he asserted on direct appeal by reproducing the
argument headings from his appellate brief.  However, because his
affirmation was filed after respondent opposed the petition,
respondent did not have the opportunity to address these claims.
Accordingly, petitioner's three additional claims cannot provide
a basis for habeas relief.  Salley v. Graham, 07 Civ. 455 (GEL),
2008 WL 818691 at *3 n.3 (S.D.N.Y. Mar. 27, 2008)("Because
[petitioner] did not raise these claims in his initial petition,
and therefore, deprived the government of an opportunity to
respond to them, these claims are not a basis for
relief.")(internal quotation marks omitted); Bradley v. Burge, 06
Civ. 0040 (JGK), 2007 WL 1225550 at *7 (S.D.N.Y. Apr. 19,
2007)(same); see also United States ex rel. Morgan v. McElroy,
981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997)("It is well settled in
the Second Circuit that a party may not raise an argument for the
first time in his reply brief.").

the jury that allegedly misstated the law of burglary (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Mar. 8, 2004 ("Habeas Pet."), ¶ 13). Respondent does not contend that the petition is untimely or that petitioner failed properly to exhaust his claims (Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated Sept. 2, 2004 ("Resp. Mem.") at 6-7). Respondent argues that the claim of insufficiency of the evidence is procedurally barred and, in any event, fails on the merits and that the claim of prosecutorial misconduct also fails on the merits (Resp. Mem. at 8-26).

III.  <u>Analysis</u>

A.  <u>Procedural Bar</u>

Respondent first argues that petitioner's claim of insufficiency of the evidence is procedurally barred from federal habeas review (Resp. Mem. at 10-15).

A habeas petitioner's constitutional claim can be procedurally barred if it is not asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim. As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and
> adequate to support the judgment." Coleman v.
> Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991). Moreover, "[t]his rule applies
> whether the state law ground is substantive or
> procedural." Id.
>
> *     *     *
>
> The doctrine also applies in the context of
> federal courts reviewing applications for a writ of
> habeas corpus . . . . [I]nvoking principles of comity
> and federalism . . . federal habeas courts faced with
> an independent and adequate state ground of decision
> defer in the same manner as does the Supreme Court on
> direct review.

Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999). See also

Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003); Rhagi v.

Artuz, 309 F.3d 103, 106 (2d Cir. 2002)("[I]t is settled law that

an independent and adequate state law ground for a state court

conviction cannot be disturbed on habeas."), citing Coleman v.

Thompson, 501 U.S. 722, 729-31 (1991); Brown v. State of New

York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct.

30, 2006)("When a habeas corpus petitioner defaults a federal

claim in state court . . . by failing to preserve the claim for

state appellate review . . . , the independent and adequate state

ground doctrine bars federal habeas corpus review."); Rivera v.

Moscicki, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y.

Sept. 22, 2005)("A federal court generally may not review a state

8

court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris [v. Reed], 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the Long/Harris presumption to the last "reasoned state judgment" . . . . See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). See also Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001)("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative. As the Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);
> Harris, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an alternative holding."); Wedra v.
> Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  See also

Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000);

Robles v. Superintendent of Elmira Facility, 07 Civ. 596 (LBS),

2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007); Ashley v.

Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5 (S.D.N.Y.

Nov. 3, 2006).

Finally, even where the last reasoned decision of the

state court expressly rejects a federal constitutional claim on a

state procedural ground, federal habeas corpus review will not be

precluded if (1) the state procedural ground is not independent

and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.

2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006);

Cotto v. Herbert, supra, 331 F.3d at 238-39, (2) there is cause

for and prejudice from petitioner's failure to assert his claims

in accordance with state procedural law, or (3) a failure to

consider the claim would result in a fundamental miscarriage of

justice.  Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v.

Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S.

255, 262 (1989); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005).

Here, the Appellate Division rejected petitioner's claim of insufficiency of the evidence on direct appeal by stating that it was "unpreserved" for appellate review. <u>People v. Mason</u>, <u>supra</u>, 292 A.D.2d at 294, 739 N.Y.S.2d at 258. While the Appellate Division did not cite authority for the basis of this ruling, it is clear that it rested on New York's contemporaneous objection rule. <u>See</u> N.Y. C.P.L. § 470.05(2)[5]; <u>People v. Walker</u>, --- A.D.2d ---, 851 N.Y.S.2d 881, 881 (2d Dep't 2008)("The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review[.]"), <u>citing</u> N.Y. C.P.L. § 470.05(2). To preserve an insufficient-evidence claim, a party can make a motion to dismiss that is "specifically directed" at the particular evidence or grounds that support the motion. <u>People v. Gray</u>, 86 N.Y.2d 10, 19, 652 N.E.2d 919, 921, 629 N.Y.S.2d 173, 175 (1995). A broad, generalized argument without reference to particular evidence or grounds is

_____

[5]Section 470.05(2) reads in pertinent part:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. C.P.L. § 470.05(2).

insufficient to preserve such a claim.  People v. Finger, 95

N.Y.2d 894, 895, 739 N.E.2d 290, 290, 716 N.Y.S.2d 34, 34 (2000).

In Finger, the New York Court of Appeals held that defense

counsel's general argument that "the prosecution fail[ed] to

prove each and every element of both counts of the indictment,

beyond a reasonable doubt, as a matter of law" was not

sufficiently particular to preserve the insufficient-evidence

claim.  People v. Finger, supra, 95 N.Y.2d at 895, 739 N.E.2d at

290, 716 N.Y.S.2d at 34.

        In this case, petitioner claims that the prosecution

failed to adduce sufficient evidence to prove beyond a reasonable

doubt that he unlawfully entered the Tower (Habeas Pet. ¶ 13).

See N.Y. Penal Law § 140.30 (requiring proof of unlawful entry).

At the close of the prosecution's presentation of proof, defense

counsel moved to dismiss the indictment:

> [PEOPLE]:  For the record, your Honor, the People have
> rested.
>
> THE COURT:  People rest.  Motions?
>
> [DEFENSE]:  At this time, Judge, defendant asks that
> the Court [to] dismiss each and every charge contained
> in the indictment based on the People's failure to
> prove a prima facie case as to each and every count of
> the indictment.

(Tr. 744).  The Trial Judge denied the motion and inquired

whether the defense intended to offer evidence (Tr. 744-45).  The

defense rested and then renewed its motion to dismiss in a

perfunctory manner:

[DEFENSE]:  Defense rests, Judge.

THE COURT:  And the same motions?

[DEFENSE]:  Yes Judge.

(Tr. 745).  The Trial Judge again denied the motion (Tr. 745).

Here, as in Finger, defense counsel's non-specific argument on his motion to dismiss the indictment did not satisfy New York's contemporaneous objection rule, thereby failing to preserve this issue for appellate review.  Defense counsel did not specifically identify what element of the burglary counts was not proven.  To the contrary, defense counsel merely provided a blanket statement that the People had failed "to prove a prima facie case as to each and every count of the indictment" (Tr. 744).

Because the New York Court of Appeals denied petitioner leave without comment, People v. Mason, surpa, 99 N.Y.2d at 630, 790 N.E.2d at 285, 760 N.Y.S.2d at 111, the Appellate Division was the "last state court rendering a judgment" on this claim. Harris v. Reed, supra, 489 U.S. at 262; see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").  Thus, the Appellate Division's rejection of petitioner's insufficient-evidence claim raises a procedural bar to federal habeas review if the court's reliance

13

on New York's contemporaneous objection rule is "independent" of the merits of the federal claim and this state rule is an "adequate" basis for the court's decision.  Harris v. Reed, supra, 489 U.S. at 260-61.

It is clear from the face of the Appellate Division's decision that its ruling rested on an "independent" state procedural ground.  In rejecting petitioner's claim, the court stated that "[d]efendant's challenge to the sufficiency of the evidence that he knowingly entered the building unlawfully is unpreserved[.]"  People v. Mason, surpa, 292 A.D.2d at 294, 739 N.Y.S.2d at 258.  This language in no way implicated the merits of petitioner's federal claim.  The fact that the Appellate Division held in the alternative that "the verdict was based on legally sufficient evidence" is of no moment.  Glenn v. Bartlett, supra, 98 F.3d at 724; Brown v. Miller, 04 Civ. 9804 (LBS), 2005 WL 1773683 at *2 n.3 (S.D.N.Y. July 26, 2005)("The procedural default doctrine applies even where . . . the Appellate Division issues an alternative holding addressing the procedurally defaulted claim on the merits."), citing Harris v. Reed, supra, 489 U.S. at 264.

In addition, New York's contemporaneous objection rule is "adequate" to support the Appellate Division's decision.  A state procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question."  Garcia v.

Lewis, supra, 188 F.3d at 77, quoting Ford v. Georgia, 498 U.S.
411, 423-24 (1991).  New York courts routinely apply the
contemporaneous objection rule to deny review of insufficient-
evidence claims where arguments on a motion to dismiss an
indictment are not made with the requisite specificity.  E.g.,
People v. Ferraro, --- A.D.2d ---, --- N.Y.S.2d ---, 2008 WL
606995 at *1 (2d Dep't Mar. 4, 2008)("The defendant's challenge
to the legal sufficiency of the evidence under Indictment No.
680-04 is unpreserved for appellate review, since defense counsel
made only a general motion to dismiss that indictment and did not
elaborate with specific facts or grounds the basis for dismissal
(see CPL 470.05[2])[.]"));  People v. Massey, 45 A.D.3d 1044,
1046, 845 N.Y.S.2d 197, 199 (3d Dep't 2007)("Defendant's
sufficiency-based challenges were not preserved given that no
grounds were specified in the defense's motion to dismiss at the
close of the proof[.]");  People v. Nesbitt, 41 A.D.3d 866, 866,
837 N.Y.S.2d 579, 580 (2d Dep't 2007)("The defendant's challenge
to the legal sufficiency of the evidence is unpreserved for
appellate review, as her general motions to dismiss at the close
of the People's case and at the close of all the evidence failed
to specify any grounds for dismissal (see CPL 470.05[2])[.]"));
People v. Thompson, 33 A.D.3d 825, 826, 823 N.Y.S.2d 112, 113 (2d
Dep't 2006)("The defendant's challenge to the legal sufficiency
of the evidence is unpreserved for appellate review since the

15

perfunctory and general motion to dismiss made at the close of
the People's case failed to specify any grounds for dismissal
(see CPL 470.05[2])[.]")).  Thus, petitioner's claim of
insufficiency of the evidence is procedurally barred from federal
habeas review.  See Weathers v. Conway, 05-CV-139 (WMS), 2007 WL
2344858 at *8 (W.D.N.Y. Aug. 15, 2007); Brown v. State of New
York, supra, 2006 WL 3085704 at *2-*3.

Petitioner can overcome this procedural bar if he can
show "cause for" and "prejudice" from his state procedural
default or that failure to consider his federal claim will result
in a "fundamental miscarriage of justice." Coleman v. Thompson,
supra, 501 U.S. at 750.  Cause for a state procedural default is
established when a petitioner shows that "some objective factor
external to the defense impeded counsel's efforts to comply with
the State's procedural rule[.]" Murray v. Carrier, 477 U.S. 478,
488 (1986).  For example, cause may be established by a showing
that the factual or legal basis for a claim was not reasonably
available, that interference by officials made compliance with
the rule impracticable, or that counsel was constitutionally
ineffective.  Murray v. Carrier, supra, 477 U.S. at 488.

Here, petitioner does not advance any argument to
support a showing of cause for his procedural default of this
claim.  Indeed, the fact that defense counsel made a general
motion to dismiss the indictment without specifying particular

16

grounds undercuts any argument that an external factor impeded his ability to comply with the contemporaneous objection rule. Because petitioner cannot show cause, I need not address whether he can show prejudice. <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 127 (2d Cir. 1995); <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985)("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not and cannot show that a fundamental miscarriage of justice will result if his claim is not considered. "To establish a 'miscarriage of justice,' a petitioner must demonstrate that he is 'actually innocent.'" <u>Cruz v. Filion</u>, 456 F. Supp.2d 474, 481 (S.D.N.Y. 2006), <u>quoting</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001). To sustain this burden, petitioner must offer "new reliable evidence . . . that was not presented at trial." <u>Schlup v. Delo</u>, <u>supra</u>, 513 U.S. at 324. Petitioner has not offered any new evidence showing his actual innocence.

Accordingly, petitioner's claim of insufficiency of the evidence should be dismissed as procedurally barred.

B.  Merits

I now turn to the merits of petitioner's claim of prosecutorial misconduct.

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set of in the former paragraph as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  See also Early v. Packer, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). . . .

> Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

>> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision

18

> applied [a Supreme Court case] incorrectly.  See
> Bell v. Cone, 535 U.S. 685, 698-699, 122 S.Ct.
> 1843, 152 L.Ed.2d 914 (2002); Williams, supra, at
> 411, 120 S.Ct. 1495.  Rather, it is the habeas
> applicant's burden to show that the state court
> applied [that case] to the facts of his case in an
> objectively unreasonable manner."

    Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Brown v. Payton, 544 U.S. 133, 139-40 (2005); see also Lockyer v. Andrade, 538 U.S. 63, 70-72 (2003); Policano v. Herbert, 507 F.3d 111, 115 (2d Cir. 2007); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006); Brown v. Artuz, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005).  "Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000).  In order for a state court's application of Supreme Court precedent to be unreasonable, "[s]ome increment of incorrectness beyond error" is required.  Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005)(internal quotation marks omitted); accord Brown v. Artuz, supra, 283 F.3d at 500-01; Aparicio v.

Artuz, supra, 269 F.3d at 94.  However, "the increment need not

be great; otherwise, habeas relief would be limited to state

court decisions 'so far off the mark as to suggest judicial

incompetence.'"  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.

2000), quoting Matteo v. Superintendent, SCI Albion, 171 F.3d

877, 889 (3d Cir. 1999)(en banc); accord Gersten v. Senkowski,

supra, 426 F.3d at 607.

     The nature of the rule in issue also impacts the

assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway
> in their interpretation, the same is not true of more
> general rules, the meaning of which "must emerge in
> application over the course of time."  [Yarborough v.
> Alvarado, 541 U.S. 652, 664 (2004)].  "The more general
> the rule, the more leeway courts have in reaching
> outcomes in case by case determinations."  Id.

Serrano v. Fischer, supra, 412 F.3d at 297; see also Hawkins v.

Costello, supra, 460 F.3d at 243.

     Both the "contrary to" and "unreasonable application"

clauses "restrict[] the source of clearly established law to [the

Supreme] Court's jurisprudence."  Williams v. Taylor, supra, 529

U.S. at 412.  "That federal law, as defined by the Supreme Court,

may either be a generalized standard enunciated in the [Supreme]

Court's case law or a bright-line rule designed to effectuate

such a standard in a particular context."  Kennaugh v. Miller,

289 F.3d 36, 42 (2d Cir. 2002).  "A petitioner can not win habeas

relief solely by demonstrating that the state court unreasonably

20

applied Second Circuit precedent." <u>Yung v. Walker</u>, 341 F.3d 104, 110 (2d Cir. 2003); <u>accord</u> <u>DelValle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002).

To be entitled to the deferential standard of review under subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 230; <u>see</u> <u>also</u> <u>Ryan v. Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002)("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145. "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." <u>Mateo v. Fishkill Corr. Facility</u>, CV-04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), <u>quoting</u> <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 138. To make this classification, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was

aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, supra, 458 F.3d at 145 n.16.

Here, upon examining these three factors, I conclude that the Appellate Division adjudicated the merits of petitioner's claim of prosecutorial misconduct by holding:

> To the extent that a portion of the prosecutor's summation may be viewed as containing an erroneous statement of law, it did not deprive the defendant of a fair trial, since the court's charge was sufficient to prevent any prejudice and there was no pattern of egregious misconduct (see People v. D'Alessandro, 184 A.D.2d 114, 119, lv denied 81 N.Y.S.2d 884).

People v. Mason, supra, 292 A.D.2d at 294-95, 739 N.Y.S.2d at 258. This conclusion is not altered by the fact that the Appellate Division did not explicitly refer to the Due Process Clause of the Fourteenth Amendment or relevant federal case law. See Sellan v. Kuhlman, supra, 261 F.3d at 312 (noting that a state court decision may be deemed on the merits "even if the state court does not explicitly refer to . . . relevant federal case law"); Cheng Kang Shi v. Connolly, 06 CV 2093 (NG)(RLM), 2007 WL 4380276 at *6 (E.D.N.Y. Dec. 13, 2007)("AEDPA's deferential standard of review applies even if the state court did not explicitly refer to either the federal claim or to relevant federal case law.")(internal quotation marks omitted).

Because this claim was adjudicated on the merits, I must review the Appellate Division's decision under the deferential standard of review set forth in 28 U.S.C. § 2254(d).

Petitioner claims that the prosecutor misstated the law by arguing, during summation, that the prosecution had presented evidence that proved, beyond a reasonable doubt, that petitioner had unlawfully entered the Tower:

> [PEOPLE]:  So there's no question . . . that [petitioner] knowingly entered unlawfully.  That is, I think, the issue in this case.  How does the evidence prove to you that he knowingly entered unlawfully?
>
> There are signs in the lobby, and those signs say . . . guests and messengers must sign in . . . .
>
> Suffice it to say in both those lobbies, there's a sign, and that sign gives the policy that's supposed to be followed.  We know that the defendant never signed in.  In evidence are the sign-in sheets from that day . . . and [petitioner's] name doesn't appear here.
>
> [I]f there is a sign on the wall that gives the policy, you can't just ignore the sign.
>
> [DEFENSE]:  Objection.
>
> THE COURT:  Objection overruled.  It's argument. Proceed.
>
> [PEOPLE]:  To bring it back to our own everyday experiences, if there is a parking sign, a no parking sign on the street and you park where the no parking sign is, you're still parked illegally.  It's the same idea.
>
> [DEFENSE]:  Objection, your Honor.
>
> [PEOPLE]:  You can't walk into a building and ignore the sign.  You're there unlawfully if you do.
>
> [DEFENSE]:  That's not the law.

THE COURT:  It's argument.  Proceed.
(Tr. 779-81).  Petitioner asserts that "the Prosecutor improperly commented to the Jury that the Lobby Signs, directing visitors to sign in were dispositive of the issue as to whether the building beyond the lobby was 'Open to the Public'" (Habeas Pet. ¶ 13).  Petitioner's argument is unpersuasive because the prosecutor's comment, even assuming it was improper, was not sufficiently severe to unfairly prejudice petitioner and deprive him of a fair trial.

A prosecutor's comments or argument during summation will justify habeas relief only when they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994)("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.'"), quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990), quoting Darden v. Wainwright, supra, 477 U.S. at 181.  Accord Greer v. Miller, 483 U.S. 756, 765 (1987)("To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the

defendant's right to a fair trial.'"), quoting United States v. Bagley, 473 U.S. 667, 676 (1985).

In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Escobar v. Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005)(same), quoting Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998).

Courts in this Circuit have considered the following non-exhaustive factors in assessing whether prosecutorial misconduct during summation resulted in actual prejudice to a criminal defendant:  "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley v. Scully, supra, 41 F.3d at 824, citing Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); see also United States v. Millar, 79 F.3d 338, 343 (2d Cir. 1996); Floyd v. Meachum, supra, 907 F.2d at

355; <u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir. 1981).
These mitigating factors are present here.

First, the prosecutor's statement was not severe.  In
overruling defense counsel's objections, the Trial Judge stated
that the comment was permissible "argument" (Tr. 781).  In
addition, the Appellate Division found that the prosecutor's
conduct during summation did not deprive petitioner of a fair
trial because "there was no pattern of egregious misconduct[.]"
<u>People v. Mason</u>, <u>supra</u>, 292 A.D.2d at 294-95, 739 N.Y.S.2d at
258; <u>accord</u> <u>Tankleff v. Senkowski</u>, <u>supra</u>, 135 F.3d at 253 ("[T]he
severity of the prosecutor's misconduct in [petitioner's] case
was mitigated by the brevity and fleeting nature of the improper
comments."); <u>Escobar v. Senkowski</u>, <u>supra</u>, 2005 WL 1307939 at *15
("[A] prosecutor's improper comments during summation must be
more than short and fleeting, but must instead be so numerous
and, in combination, so prejudicial that a new trial is
required.")(internal quotation marks omitted).  Brief and limited
instances of improper argument by the prosecution during its
summation do not ordinarily warrant habeas relief.  <u>Donnelly v.
DeChristoforo</u>, <u>supra</u>, 416 U.S. at 646 ("isolated passages" of
prosecutor's argument, while improper, did not merit habeas
relief); <u>Kaiser v. New York</u>, 394 U.S. 280, 281 n.5 (1969)(same).

Second, the Trial Judge instructed the jury before and
after summations that each party's closing statement was merely

argument and that the jury could accept or reject these arguments based on the extent of their logical connection to the evidence in the record (Tr. 754, 794-95). The Trial Judge also provided a detailed charge to the jury on the elements of burglary in the first degree, including the unlawful-entry element (Tr. 816), and the Appellate Division noted that the Trial Judge's "charge was sufficient to prevent any prejudice" resulting from the prosecutor's comment. People v. Mason, supra, 292 A.D.2d at 294, 739 N.Y.S.2d at 258. A jury is "presumed to follow their instructions[,]" Richardson v. Marsh, 481 U.S. 200, 211 (1987), and the record discloses no reason why this presumption should not apply here. See Wicks v. Miller, 05 Civ. 5341 (JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15, 2007)(jury not unduly influenced by prosecutor's comments concerning the evidence during opening statement where trial court instructed jury that only its recollection of the evidence controlled).

Third, petitioner's conviction was certain absent the prosecutor's comment because the prosecution presented substantial evidence of petitioner's guilt. Three security guards testified that they observed petitioner through the building's security monitors kicking a locked office door on the fourteenth floor of the Tower (Tr. 432, 567, 635-37). The two security guards who confronted petitioner on the eighth floor also testified that he brandished a pistol, threatened them with

27

it, and, during a physical altercation, struck one of them in the
side of the face with the gun (Tr. 438, 441-42, 572-73, 576).
Immediately after petitioner fled the eighth floor, Oliveras
found petitioner's wallet, which contained photo identification
of petitioner (Tr. 580-81, 624-24, 697). That same evening, a
loaded pistol, matching the description given by the security
officers, was also recovered in a box near a garbage bin on the
fourteenth floor (Tr. 501-03). The pistol's hammer was in the
cocked position (Tr. 502, 531-32). There was also testimony that
signs in the Tower's lobbies placed visitors on notice that the
building was not open to the public and that non-residents had to
sign a log book before entering (Tr. 678-82). Petitioner was
allegedly inside the Tower to drop off material at the Clique
Modeling Agency (Tr. 581-82, 624-25). However, Clique was closed
on this day and was not located on the fourteenth floor of the
Tower, the floor on which petitioner was observed through the
building's security cameras kicking an office door (Tr. 486, 603-
04). In addition, the log book, which was admitted into
evidence, did not contain petitioner's signature (Tr. 682).
Given the strong evidence of guilt presented at trial, coupled
with the fact that the prosecutor's comment was extremely
limited, petitioner has failed to established that the
prosecutor's conduct had a substantial or injurious effect or
influence on the jury's verdict. See Bentley v. Scully, supra,

28

41 F.3d at 825 ("Because of the compelling evidence in the prosecution's case against [petitioner], as well as the fact that the prosecutor's summation comments were both brief and isolated, we find that [petitioner] has failed to demonstrate that the prosecutor's misconduct had a substantial or injurious effect on the jury's verdict.").

Finally, when analyzing the prosecution's improper argument during summation for possible substantial or injurious effect or influence on the jury's verdict, the prosecution's argument cannot be examined in a vacuum.  Rather, the prosecution's argument must be reviewed in the context of the defense's summation that preceded it.  See Sierra v. Burge, 06 Civ. 14432 (DC), 2007 WL 4218926 at *8 (S.D.N.Y. Nov. 30, 2007)("Improper remarks in summation must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error.")(internal quotation marks omitted); see also Greer v. Miller, supra, 483 U.S. at 765-66, quoting Darden v. Wainwright, supra, 477 U.S. at 179 ("It is helpful as an initial matter to place [the prosecution's] remarks in context. . . . The prosecutors' comments must be evaluated in light of the defense argument that preceded it. . . .").  Improper comments by the prosecution during summation -- although not excused -- are less likely to be actually prejudicial to the trial's fairness where the defense's summation invites the

prosecution's response. As the Supreme Court explained in <u>United States v. Young</u>, 470 U.S. 1 (1985), "the idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." <u>Darden v. Wainwright</u>, <u>supra</u>, 477 U.S. at 182; <u>see</u> <u>also</u> <u>Escobar v. Senkowski</u>, <u>supra</u>, 2005 WL 1307939 at *14 (noting "that where the defense's summation invites a particular response from the prosecution, such a response is less likely to jeopardize the trial's fairness"). Here, defense counsel specifically argued during summation that the prosecution had presented insufficient evidence on the element of unlawful entry (Tr. 758-59, 766-68), which, in turn, invited the prosecution to rebut this assertion during its summation by referring to the signs in the lobbies imposing conditions under which visitors could enter the building. When viewed in the context of the defense argument that preceded it, the prosecution's comment did not have a substantial and injurious effect on the trial's fairness, and thus does not warrant habeas relief.

Accordingly, the Appellate Division's decision that the prosecutor's comment during summation did not deprive petitioner of his Due Process right to a fair trial is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

IV. <u>Conclusion</u>

30

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005)(per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the

ability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005)(per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, United States District Judge, 500 Pearl Street, Room 2260, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel. FAILURE

31

TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJEC-
TIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474
U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d
1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300
(2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d
Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir.
1983).

Dated:   New York, New York
         May 13, 2008

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Leonard Mason
98-A-2434
Clinton Correctional Facility
Route 374, Cook Street
P.O. Box 2000
Dannemora, New York   12929-2000

Nisha Desai, Esq.
New York State Office of the
    Attorney General
120 Broadway
New York, New York   10271